ney for the Seneca Nation of Indians, is brought by one having no such official relation to it, but under and by authority of a resolution of its governing council.

In the earlier case of Jackson v. Reynolds, 14 Johns. 335, it was held that the Indians could prosecute or defend in the courts of the state only by the attorney appointed for them. This earlier case, however, appears to have been overruled by the later decision in Jemmison v. Kennedy, 55 Hun, 47, 7 N. Y. Supp. 296, in which the court said, in effect: That the reasons assigned for holding the rule laid down in Jackson v. Reynolds were no longer applicable to the present status of the Indians, and especially of the Seneca Nation; that much legislation had intervened relative to the Indians since the decision of Jackson v. Reynolds. In the case of Seneca Nation of Indians v. John (Sup.) 16 N. Y. Supp. 40, Mr. Justice Daniels held that, the Seneca Nation of Indians having become a corporation, it had an inherent right as a corporation to maintain just such an action as the one brought in this case. We feel bound to respect and follow that decision until the holding has been reversed by some higher court. See, also, section 55 of the Indian Law. Section 74 of the Indian Law, providing for the appointment of an attorney of the Seneca Nation of Indians, and providing that he shall, with the consent of the council, prosecute such actions and proceedings as he may deem proper and necessary, etc., does not, in terms, prohibit the nation from retaining other counsel, and attorneys to represent it in actions brought in the state court. We agree with the views expressed by Mr. Justice Daniels on the right of the Nation to prosecute an action like this by such attorney as it may select.

For these reasons, the motion to vacate the preliminary injunction is denied, with $10 costs of motion.

So ordered.

---

## LALOR v. TUCKER.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

1. EVIDENCE (§ 372*)—RECORDS—ADMISSIBILITY.
　　Under Code Civ. Proc. § 955, making admissible in evidence records of the surrogate of New York City where they have been recorded 20 years, and making them presumptive evidence of the facts recited therein, a petition for the appointment of an administrator and an instrument renouncing the right to administer, etc., which had been recorded more than 20 years, were admissible to show the date of decedent's death in an action involving the validity of a deed executed by his attorney in fact.

　　[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1625; Dec. Dig. § 372.*]

2. PRINCIPAL AND AGENT (§ 43*)—DEATH OF PRINCIPAL—EFFECT.
　　Death of the grantor defeats a power of attorney to convey land; title descending to his heirs at his death.

　　[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 67; Dec. Dig. § 43.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. VENDOR AND PURCHASER (§ 131*)—CONTRACT TO CONVEY—MARKETABILITY
OF TITLE.

A title depending upon a deed executed by an attorney in fact after
the date of the grantor's death as shown by recitals in papers relating
to the appointment of his administrator is not marketable, though the
land has been held adversely under the deed for 27 years, in the absence
of evidence showing that the grantor was alive when the deed was ex-
ecuted, or whether during that period any of the parties interested in
the property were infants or incompetents.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §
247; Dec. Dig. § 131.*]

Appeal from Special Term, New York County.

Action by James M. Lalor against Dora M. Tucker. From the
judgment, plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, Mc-
LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Rufus L. Weaver, for appellant.

George Edwin Joseph, for respondent.

INGRAHAM, J. This was an action for the specific performance
of a contract for the sale of real property. The decree is of a some-
what unusual form. It directs the defendant to tender a conveyance
to the plaintiff. Upon the tender of such conveyance, the plaintiff is
required to pay to the defendant or to her attorney the sum of money
required to be paid on the completion of the contract, and that, if the
plaintiff refuses to receive the said deed, the defendant shall file the
same with the clerk of this court, and, upon the filing of such con-
veyance, the plaintiff shall pay to the defendant or to her attorney
the amount found due, and that defendant have execution therefor.
There is no provision to ascertain the rent, interests, taxes, and water
rates so that they could be apportioned. It is alleged that both parties
are anxious to perform if a good title can be arranged, but the plain-
tiff alleges a defect in the defendant's title, in that a deed which is
in the chain of title which was executed in the year 1860 by the at-
torney in fact of one Stephen V. Bouland, then the owner of the prop-
erty, was executed by the attorney after the death of Bouland, his
principal. The deed in question was dated June 6, 1860, by Stephen
V. Bouland and Celine, his wife, of the city of New York, residing
in Paris, France, by Francis R. Tillou, the attorney in fact of the
grantors under a power of attorney, dated May 8, 1854, and acknowl-
edged at Paris, France, before the United States consul, by which
Bouland and wife appointed Tillou their lawful attorney, with power
to convey to any person any lands or real estate situated in the city and
state of New York, or of the United States, whereof the Boulands
were seised or possessed, and which was duly recorded. There was
presented to the court and offered in evidence a petition of the said
Francis R. Tillou asking for letters of administration on the estate of
Bouland. This petition was verified August 29, 1863, and alleged
that the petitioner was attorney in fact for the widow and children
of Stephen V. Bouland; that Stephen V. Bouland died a natural death

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the empire of France on or about January 5, 1860, leaving no will and possessed of personal property in the county of New York, and left as his next of kin his widow and three children, and prayed that letters of administration be issued to the said petitioner by the surrogate of the county of New York. There was also offered in evidence from the records of the Surrogate's Court an instrument, dated February 9, 1863, executed by the widow and children of Stephen V. Bouland, which recited that Stephen V. Bouland, of the city of New York, died in France on or about the 5th of January, 1860, leaving personal estate in the city of New York, and leaving Celine M. Bouland, his widow, Frederick B. Bouland, Charles A. Bouland, Celine E. V. Bouland, his wife, and one De La Tour, his only children and heirs at law, and renouncing the right to administer in favor of the said Tillou, and asking the surrogate of the county of New York to grant administration and letters to said Tillou, and appointing Tillou their attorney in fact in relation to the property of the decedent. This instrument was acknowledged by the widow and children of the decedent before the United States consul in Paris on the 9th day of February, 1863. Upon these instruments letters of administration were issued to Tillou. There was also presented from the records of the Surrogate's Court of New York a petition signed and verified by one Charles A. Bouland on December 5, 1865, in which it is stated that he is one of the sons of the deceased, Stephen V. Bouland, who died on or about the 5th of January, 1860, alleging that letters were granted to Tillou, who died on July 10, 1865, and praying that letters of administration be issued to the petitioner, with a renunciation by the widow and next of kin of the decedent of their right to administer. These instruments were offered in evidence by the plaintiff and objected to by the defendant as incompetent, irrelevant, and immaterial. The objection was sustained, and the plaintiff excepted.

The first question presented is whether these instruments were admissible in evidence. These instruments were filed in the surrogate's office on or before February 10, 1866. They recited as a fact the death of Bouland, upon which the surrogate was required to act in the issuance of letters of administration upon the estate, and the settlement of his estate in New York and the existence of the fact therein stated was essential to give the surrogate jurisdiction.

Section 955 of the Code, a part of article 3, provides for the proof of a document remaining in a court of record, or public office of the United States, or executed or remaining without the state. It provides that all maps, surveys, and official records which shall have been on record or on file in the office of either the register of the city and county of New York, or the surrogate of the said city, or any of the courts of record of said city, or the clerk of the city and county of New York or any county within the city of New York, or any of the departments of said city as enumerated in section 34 of the New York City consolidation act (Laws 1882, p. 8, c. 410), or in the office of the registers, surrogates, commissioners of public works, or kindred departments, or park department for a period of 20 years or upwards prior to such trial, shall be presumptive evidence of their contents,

and shall be receivable in evidence as such upon any trial in any of the courts of this state in any controversy pending therein between any parties. These instruments are a part of the official records of the Surrogate's Court of the county of New York. They are on file in the office of the surrogate of the city and county of New York. They were a part of the records of that court and on file in the office of the surrogate for upwards of 20 years prior to the commencement of this action, and it is clear that they were competent evidence by virtue of this provision of the Code. It was error, therefore, for the trial judge to reject them.

The Code also provides that such instruments "shall be presumptive evidence of their contents upon any trial in any of the courts of the said state in any controversy pending therein between any parties."

The only case in this court or the Court of Appeals in which the effect of this section of the Code has been considered is Robinson v. Supreme Commandry, 77 App. Div. 215, 79 N. Y. Supp. 13, affirmed without opinion 177 N. Y. 564, 69 N. E. 1130. The question presented in that case was as to the competency of the death certificate given by the physician of the decedent as to the cause of death; and it was held that the certificate was not competent evidence of that fact, because, under section 834 of the Code, the declaration of the physician would have been incompetent as against his patient, or those representing him, and that sections 955 and 834 must be read together, that it was not intended to repeal the prohibition contained in section 834, and this case was affirmed by the Court of Appeals (177 N. Y. 564, 69 N. E. 1130) without opinion; but it is recognized in that opinion that, if the question was to be considered literally, this certificate should have been received in evidence, and it was only rejected because, reading section 955 in connection with section 834, it was not intended to give such an instrument, filed in a department of the city of New York, greater weight than would be given to the testimony of an individual executing the instrument if called and examined before the court. In the case now before us, however, it is quite clear that the testimony of the widow and children of the decedent would have been competent evidence to prove the time of the death of the decedent. The instruments offered in evidence were executed, verified, and received by the surrogate for the purpose of giving to the Surrogate's Court of the city and county of New York jurisdiction over the estate of the decedent. They were acted on by the surrogate and based upon the statements therein contained. The estate of the decedent was administered and distributed under the laws of this state.

It seems to me that these records of the Surrogate's Court were within this section of the Code; that they were admissible in evidence in this action between the parties who claimed under a deed executed as attorney of fact by the decedent, the time of whose death was the subject in controversy; and that they were competent evidence as to the date of his death. It is entirely clear that if he died on the 5th of January, 1860, no title was conveyed by the deed executed by his attorney in fact in July, 1860. The property had descended to his heirs at law upon his death, and they at that time were vested

with title which could only be divested by a conveyance executed by the heirs at law in whom the title had vested. I think, therefore, that these instruments were admissible in evidence, and that they were presumptive evidence of the facts therein stated. We therefore have it proved that this decedent died on January 5, 1860. It appears that efforts were made to obtain some other information relating to the time of the death of the decedent, or the whereabouts of his descendants, but without avail. All the records in Paris during this period were destroyed by the Commune in 1871, and there are no records of the death of the decedent and no records from which it could be inferred that he did not die as stated in these instruments in January, 1860, and no trace has been discovered of any of his descendants.

The court has found—and the evidence sustains that finding—that this property has been held adverse to the Bouland heirs since the year 1879, when the father of the plaintiff erected a dwelling house upon a portion of the premises in question, and inclosed the balance of these premises with a substantial inclosure. This contract was to be completed on the 4th day of June, 1906, when the plaintiff rejected the title, a period of about 27 years since the adverse possession commenced. In the absence of any evidence as to whether during that period any of the parties interested in the property were infants, or had been adjudged incompetents, it seems to be settled that an adverse possession of 27 years is not sufficient to require a vendee of real property to accept title. The question here is whether this is a marketable title which a vendee under a contract of sale should be compelled to accept. We may indulge in many suppositions which would make the title marketable, as that there was a mistake in the date of the testator's death in the first power of attorney executed by his widow which substituted 1860 instead of 1863, and that that mistake was copied in the succeeding papers without its being detected by any of those who executed them. Mr. Tillou was known as a careful lawyer. He swore to the petition as to the time of the death of the testator, and it is a little difficult to see how both the widow and children of the testator and Mr. Tillou, acting for them in this country, could have failed to notice a mistake in the date of death in all the instruments executed subsequently; but with this condition of the record, with no explanation given or attempted, nothing but the verified statement contained in the instruments a part of the records of the Surrogate's Court which fixes with definiteness the death of the testator at a time certain, and without the slightest evidence to throw any doubt upon the accuracy of that statement, I do not think that this title can be said to be marketable so that the purchaser should be compelled to take title.

It follows that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.